IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

v.

3039 B STREET ASSOCIATES, INC., et al.,

Defendants.

CIVIL ACTION
NO. 12-6810

## OPINION

**Slomsky, J.**  October 10, 2013

**I.  INTRODUCTION**

On July 18, 2013, Marc J. Grossman Associates ("MJGA") filed a Motion to be joined as an additional defendant in this interpleader action, Lexington Ins. Co. v. 3039 B Street Assocs., Inc., et al. (Doc. No. 24.) The Motion is now before the Court, and for reasons that follow, the Motion will be granted.[1]  MJGA will be joined as a Defendant.

**II.  BACKGROUND**

The company known as 3039 B Street Associates, Inc. ("3039 B") owned real estate in Philadelphia, Pennsylvania, at the address it uses in its name. This property (the "Property") was insured by a hazard insurance policy (the "Policy") issued by Lexington Insurance Company ("Lexington"). (Doc. No. 1 at ¶ 7.) The Policy was effective from June 30, 2009 to June 30,

---

[1] For purposes of this Opinion, the Court has considered the Complaint (Doc. No. 1), MJGA's Motion to Join as an Additional Defendant with accompanying exhibits (Doc. No. 24), the Response of Defendant Investors Trust LC in Opposition (Doc. No. 25), a Supplemental Memorandum of Law filed by Investors Trust in Opposition with accompanying exhibits (Doc. No. 31), MJGA's Response to the Supplemental Memorandum of Law with accompanying exhibits (Doc. No. 37), and the arguments of counsel at hearings held on the Motion on September 4, 2013 and October 2, 2013.

2010 and contained a clause which named Investors Trust LC ("Investors") as the mortgagee. (Id. at ¶¶ 7-8.) Investors is a lender that lent money to 3039 B to purchase the Property in 2005. (Doc. No. 25 at 1.) In return, Investors placed a mortgage on the Property. (Id.) In January 2010, the Property was vandalized and damaged when copper materials were stolen. (Id. at 2.) That same month, 3039 B submitted a claim to Lexington for the loss it sustained (the "2010 Loss Claim"). (Doc. No. 31 at 1.)

MJGA is a public adjuster firm. On or about January 19, 2010, MJGA entered into a contract with 3039 B (the "Contract") to advise and assist 3039 B on the claim that was submitted to Lexington for the damage to the Property. (Doc. No. 24 at ¶ 3.) Pursuant to the Contract, MJGA is entitled to receive ten percent (10%) of any proceeds paid by Lexington in settlement of the claim. (Id. at ¶ 5, Exhibit A.) After MJGA completed its work on the claim, Lexington agreed to pay $206,349.72 to cover the loss. (Doc. No. 1 at ¶ 11.)[2]

On December 5, 2012, Lexington filed the present interpleader action, naming only 3039 B and Investors as Defendants. (Id. at ¶ 12.) Lexington agrees it is obligated to pay $130,041.98 (the "Proceeds")[3] under the Policy, but filed the interpleader action because of a dispute between 3039 B and Investors over who is entitled to receive the Proceeds. On July 18, 2013, MJGA filed the instant Motion to Join as an Additional Defendant, arguing that pursuant to its Contract with 3039 B, MJGA is entitled to ten percent of the Proceeds and reimbursement for appraisal

---

[2] In October 2012, Investors, as mortgagee of the 3039 B Street Property, foreclosed on the mortgage and became the record owner of the Property. (Doc. No. 31 at 1.)

[3] Lexington arrived at this figure by subtracting the $10,00 Policy deductible and advance payments of $56,676.37 and $9,631.37. (Doc. No. 1 at ¶ 12.) However, in reviewing the relevant documents, the Court noticed that Lexington actually disbursed two hundred dollars more than the stated amount. A check from Lexington, dated March 17, 2011, reveals that Lexington actually disbursed $56,876.37, rather than $56,676.37 as stated in the Complaint.

fees, totaling $16,835.44. (Doc. No. 24 at ¶¶ 4-5.) On July 31, 2013, Investors filed its Response in Opposition to the Motion. (Doc. No. 25.)

In a Supplemental Memorandum of Law in Opposition to the Motion, Investors alleged that the Contract between MJGA and 3039 B is void because MJGA did some work on the 2010 Loss Claim during the period from August 24, 2009 through February 24, 2010 when its public adjuster license was suspended. (Doc. No. 31 at 6-7.) Pursuant to a 2009 Consent Order between MJGA and the Insurance Department of the Commonwealth of Pennsylvania, MJGA's license was suspended during that time due to certain violations unrelated to the 2010 Loss Claim at issue here. (See Doc. No. 31, Exhibit A.) During the period of MJGA's license suspension, however, MJGA engaged in the following activities apparently in violation of the 2009 Consent Order:

> [1] On January 26, 2010, [MJGA], acting in the capacity as a public adjuster, submitted an Accord Property Loss Notice[4] to Independent Insurance Advisors on behalf of 3039 B Street Associates, Inc. (the Insured), with Lexington Insurance Company.[5]
>
> [2] On February 22, 2010, [MJGA], acting in the capacity as a public adjuster, conducted an inspection of the premises of 3039 B Street Associates, Inc. with Crawford & Company's Property General Adjuster Kyle Cheney regarding the [2010 Loss Claim].[6]

(Doc. No. 31, Exhibit B at 2-3.)

---

[4] An "Accord Property Loss Notice" appears to be a standard form that is submitted to an insurance company to notify it about a loss.

[5] The relationship between Independent Insurance Advisors and Lexington is not described in the Complaint. The Court will assume that they are associated with Lexington for purposes of this Opinion.

[6] MJGA does not describe its relationship with Crawford & Company in its Motion, but it appears that Crawford & Company provided property claim services and assisted MJGA in its inspection of the Property.

3

On April 4, 2011, the Insurance Department of the Commonwealth of Pennsylvania and MJGA agreed to the entry of another Consent Order against MJGA for engaging in these activities while its public adjuster license was suspended. (Doc. No. 31, Exhibit B.) This 2011 Consent Order directed MJGA to cease and desist from engaging in the violations listed above, and MJGA was ordered to pay a $1,000 fine. (Id. at 5.) That fine was paid. MJGA's license was not suspended. Thereafter, MJGA performed the balance of the work on the loss incurred by 3039 B without further violations.

## III.  LEGAL STANDARD

Fed. R. Civ. P. Rule 19 covers mandatory joinder of parties, while Rule 20 concerns permissive joinder. Rule 19 provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction <u>must</u> be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may[] as a practical matter impair or impede the person's ability to protect the interest[.]

Fed. R. Civ. P. 19(a)(1)(B)(i) (emphasis added). On the other hand, Rule 20 provides:

> Persons . . . <u>may</u> be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)-(B) (emphasis added).

Rule 24 instead governs intervention by an outside party and provides as follows:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

IV.  **ANALYSIS**

MJGA argues that it has a legally protectable interest in the Proceeds at issue in this interpleader action, and therefore its joinder is required under Federal Rules of Civil Procedure 19 and 20. (Doc. Nos. 24, 37.) According to MJGA, Fed. R. Civ. P. Rule 19 requires that it be joined as a defendant in this case. (Doc. No. 24 at ¶ 8.) MJGA also argues that the Court may permit it to join in the action pursuant to Fed. R. Civ. P. Rule 20. (Id. at ¶ 9.) While MJGA does not specifically address which subsection of each Rule applies here, Investors contends that "MJGA is in effect seeking joinder under Federal Rule of Civil Procedure 19(a)(1)(B) or to intervene pursuant to Rule 24." (Doc. No. 31 at 2.)

Investors opposes the Motion for Joinder and contends that MJGA's joinder or intervention is inappropriate for the following reasons: 1) Rules 19, 20, and 24 do not provide a basis for MJGA's joinder or intervention in the interpleader action; 2) as a mortgagee, Investors' interest in the full amount of the Proceeds has priority over any alleged interest of MJGA; and 3) MJGA does not have a legally protectable interest in the Proceeds because its Contract with 3039 B is void and unenforceable. (Doc. Nos. 25, 31.)

The Court agrees with MJGA that Investors' second argument that Investors has priority over the Proceeds as a mortgagee is premature at this stage, as it goes to the merits of the underlying action. Therefore, the Court declines to address that argument at this stage.

Furthermore, the Court is not persuaded by Investors' third argument that MJGA's Contract with 3039 B is void and unenforceable because MJGA's public adjuster license was suspended from August 24, 2009 through February 24, 2010. (Doc. No. 31 at 6-7.) By MJGA's own admission, it entered into the Contract with 3039 B on or about January 19, 2010.[7] (Doc.

---

[7] As Investors notes in its Supplemental Brief Opposing the Motion, it is unclear when this

No. 24 at ¶ 3.) Although this occurred during a period when MJGA's public adjuster license was suspended, the Contract with 3039 B was not listed as a violation in the 2011 Consent Order, the second one agreed to in this case. (See Doc. No. 31, Exhibit B.) Moreover, despite entering into the Contract during a period of license suspension, MJGA did the vast majority of its work on the 2010 loss after its license was reinstated. (See Doc. No. 24, Exhibit B.) For these reasons, the Court is not persuaded that the Contract between MJGA and 3039 B is void and unenforceable. Thus, Investors' third argument fails.

Investors' remaining argument is whether the Federal Rules of Civil Procedure require, or permit, MJGA's joinder or intervention as a defendant. Investors contends that Rules 19, 20,[8] and 24 do not provide a basis for MJGA's joinder or intervention in the interpleader action. The Third Circuit discussed Rules 19 and 24 in Liberty Mutual Ins. Co. v. Treesdale, Inc., 419 F.3d 216 (3d Cir. 2005). That case involved a declaratory judgment action filed by Liberty Mutual Insurance Company against Pittsburgh Metals Purifying Company ("PMP"). Liberty Mutual defended PMP and indemnified it in numerous asbestos-related lawsuits. Treesdale, 419 F.3d at

---

contract was entered into. (Doc. No. 31 at 7-8.) In its Motion, MJGA states that it entered into the contract with 3039 B on or about January 19, 2010. (Doc. No. 24 at ¶ 3.) On the contract itself, however, that date is listed as the date of loss. Furthermore, a representative of 3039 B did not sign the contract until January 29, 2010, while Marc Grossman signed for MJGA on February 29, 2010, after the date of the suspension. (Doc. No. 24, Exhibit A.)

[8] Rule 20 does not apply here because MGJA does not seek to join in the interpleader action as a plaintiff pursuant to Rule 20(a)(1) and is not being joined in by another party as an additional defendant pursuant to Rule 20(a)(2). Rule 20(a)(2) is cited above, and Rule 20(a)(1) provides as follows:

> Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1)(A)-(B).

219.  In Treesdale, Liberty Mutual sought a declaration that it would have no further duty to defend or indemnify PMP once the final $5 million had been paid under the insurance policies it had issued.  Id.  At that time, outside third parties (the "intervenors") sought to intervene in the action, arguing that PMP was insolvent, and therefore their right to recovery for asbestos-related injuries could be eliminated in the declaratory judgment action if the court found for Liberty Mutual.  Id.  The intervenors sought to intervene pursuant to Fed. R. Civ. P. Rules 19 and 24.  Id.

According to the Third Circuit, both Rule 19 and 24 require the applicant to demonstrate a legally protectable interest in the underlying action.  Treesdale, 419 F.3d at 230.  Applying both rules, the Third Circuit found that the intervenors did not have a legally protectable interest in the underlying insurance funds to justify their intervention in the declaratory judgment action.  Id. at 220-30.  In reaching this conclusion, the Court of Appeals relied heavily on Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., in which the Court noted:

> To establish a sufficient interest for intervention, Appellants must demonstrate "'an interest relating to the property or transaction which is the subject of the action.'"
>
> . . . [A]n intervenor's interest must be one that is significantly protectable. [This means that] the interest must be a legal interest as distinguished from interests of a general and indefinite character. The applicant must demonstrate that there is a tangible threat to a legally cognizable interest to have the right to intervene. This interest is recognized as one belonging to or one being owned by the proposed intervenors.... In general, a mere economic interest in the outcome of litigation is insufficient to support a motion to intervene. Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene.... While a mere economic interest may be insufficient to intervene, an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund. Thus, when a particular fund is at issue, an applicant claims an interest in the very property that is the subject matter of the suit.

Treesdale, 419 F.3d at 220-21 (quoting Mountain Top, 72 F.3d at 366 (citations omitted)).  The Court of Appeals found that the intervenors' only interest in the case was to ensure that the defendant, PMP, would have sufficient resources to satisfy any judgment they might obtain in a

7

personal injury lawsuit. Id. at 225. According to the Court, rather than be legally protectable, this was a "mere economic interest" that did not warrant their intervention in the action. Id. at 230.

Because MJGA and Investors both rely on the Treesdale decision, the Court's analysis will begin there. As discussed in Treesdale, both Rules 19 and 24 require MJGA to demonstrate that it has a legally protectable interest in the underlying action. Treesdale, 419 F.3d at 230. Although a mere economic interest is generally an insufficient reason for intervention, "an intervenor's interest in a specific fund is sufficient to entitle intervention in a case affecting that fund." Id. at 220-21 (quoting Mountain Top, 72 F.3d 361, 366 (3d Cir. 1995) (citations omitted)).

The present interpleader action affects the disbursement of the Proceeds of the 2010 Loss Claim for which MJGA performed work as a public adjuster. In fact, Lexington had previously issued two checks, one for $56,876.37[9] and another for $9,631.37. (Doc. No. 1 at ¶ 12.) Both checks were made out to 3039 B, Investors, and MJGA. (See Doc. No. 37, Exhibit A at 1, 3.) Given that MJGA's work contributed to the settlement of the 2010 Loss Claim and to the creation of the Proceeds, or the fund at issue, and because the interpleader action will affect disbursement of the remaining Proceeds, it is clear that MJGA has an interest in this specific fund.

In addition, unlike the intervenors in Treesdale who had no contractual relationship with either the plaintiff or the defendant, MJGA does have a contractual relationship with Defendant 3039 B. 419 F.3d at 225. Therefore, the interpleader action between Lexington, 3039 B, and Investors could have an immediate, adverse effect on MJGA. See id. Because MJGA has a

---

[9] See note 2 regarding a discrepancy in the amount previously paid.

legally protectable interest in the specific fund at issue in the instant interpleader action, MJGA must be joined as a defendant under Rule 19. See Fed. R. Civ. P. 19(a)(1)(B)(i). MJGA's intervention is also supported by Rule 24, as none of the current parties are likely to adequately represent MJGA's specific interest in the Proceeds. See Fed. R. Civ. P. 24(a)(2).

**V.    CONCLUSION**

For the reasons listed above, the Court will grant MJGA's Motion to be joined as an additional defendant in this matter.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>3039 B STREET ASSOCIATES, INC., et al.,<br><br>Defendants. | CIVIL ACTION<br>NO. 12-6810 |

# ORDER

**AND NOW**, this 10th day of October 2013, upon consideration of the Complaint (Doc. No. 1), MJGA's Motion to Join as an Additional Defendant with accompanying exhibits (Doc. No. 24), the Response of Defendant Investors Trust LC in Opposition (Doc. No. 25), a Supplemental Memorandum of Law filed by Investors Trust in Opposition with accompanying exhibits (Doc. No. 31), MJGA's Response to the Supplemental Memorandum of Law with accompanying exhibits (Doc. No. 37), and the arguments of counsel at the hearings held on the Motion to Join as an Additional Defendant on September 4, 2013 and October 2, 2013, and in accordance with the Opinion of the Court issued this day, it is **ORDERED** as follows:

1. MJGA's Motion to Join as an Additional Defendant (Doc. No. 24) is **GRANTED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.