IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

Plaintiff,

v.

3039 B STREET ASSOCIATES, INC., et al.,

Defendants.

CIVIL ACTION
NO. 12-6810

## OPINION

**Slomsky, J.**                                                          **March 6, 2014**

TABLE OF CONTENTS

I.   INTRODUCTION…………………………………………………………….... 2

II.  FACTUAL BACKGROUND ………………………………………………… 3

    A.  The 2008 Loss Claim ………………………………………………….... 3

    B.  The 2010 Loss Claim………………………………………………….… 5

III. STANDARD OF REVIEW……………………………………………………… 8

IV.  ANALYSIS……………………………………………………………………… 10

    A.  Cross-Motions for Summary Judgment of Lexington Insurance Company and

        Investors Trust LC On the 2008 Loss……………….……………………...10

        1.  Investors' Breach of Contract Claim Against Lexington Regarding

            Payment for the 2008 Loss is Not Time Barred………...............................11

        2.  Investors is Entitled to Judgment as a Matter of Law on its Breach of

            Contract Claim Against Lexington………………………………………..17

    B.  Cross-Motions for Summary Judgment of Investors Trust LC and

        3039 B Street Associates, Inc. On the 2010 Loss………………………………..21

        1.  3039 B Street is Not Entitled to the Interpleaded Funds Because

            the Foreclosure Action Terminated its Interest in the Property……………..22

V.   CONCLUSION……………………………………………………………….. 24

## I.     INTRODUCTION

This interpleader[1] action stems from the 2010 vandalism and theft at a warehouse located at 3039 B Street in Philadelphia, Pennsylvania ("the Property").  A company named 3039 B Street Associates, Inc. ("3039 B Street") owned the warehouse.  Investors Trust LC ("Investors") held a mortgage on the Property.  The mortgage agreement between 3039 B Street and Investors required 3039 B Street to obtain hazard insurance.  Lexington Insurance Company ("Lexington") issued a hazard insurance policy to 3039 B Street.

On or about January 19, 2010, someone broke into the Property and removed copper wiring from the building.  That same month, 3039 B Street submitted a claim to Lexington for the loss it sustained (the "2010 Loss Claim").  Around the same time, 3039 B Street entered into a contract with a public adjuster, Marc J. Grossman Associates ("MJGA"), which advised and assisted 3039 B Street in submitting the 2010 Loss Claim.

After MJGA completed its work on the claim, Lexington agreed to pay $206,349.72 to cover the loss.  Lexington has already issued two checks to Investors to cover the loss in the amounts of $56,876.37 and $9,631.37.  After the 2010 loss, 3039 B Street defaulted on the mortgage.  In October 2012, Investors, as mortgagee of the Property, foreclosed on the mortgage and became the record owner.

---

[1] Interpleader is an action by a party to determine the rights between two or more people who claim to have an interest in certain property.  Interpleader is governed by Federal Rule of Civil Procedure 22 which provides:

> (1) Persons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead.  Joinder for interpleader is proper even though: (A) the claims of the several claimants, or the titles on which their claims depend, lack a common origin or are adverse and independent rather than identical . . .

> (2) A defendant exposed to similar liability may seek interpleader through a crossclaim or counterclaim.

On December 5, 2012, Lexington filed this interpleader action. Lexington agrees it is obligated to pay an additional $130,041.98 under the policy but filed this interpleader action because of a dispute between 3039 B Street and Investors over who is entitled to receive the additional proceeds. MJGA, the adjuster, was permitted to join in this action as an additional defendant and also seeks a portion of the insurance proceeds pursuant to its agreement with 3039 B Street to adjust the loss. All of the parties, except MJGA, have filed motions for summary judgment. Those motions are now before the Court for disposition.

II.      **FACTUAL BACKROUND**

    A. **The 2008 Loss Claim**

The Property located at 3039 B Street had been damaged prior to the vandalism and theft that took place in January 2010. On or about January 6, 2008, a sprinkler pipe ruptured, flooding and damaging the warehouse. (Doc. No. 7 at ¶ 33.) At the time, 3039 B Street owned the warehouse. It acquired ownership in 2005, when an individual named Frank Raffaele loaned $250,000 to 3039 B Street to purchase the Property. (Doc. No. 7 at ¶ 8.) The loan was evidenced by a Promissory Note which was secured by a Mortgage. (Id. at ¶¶ 1, 3.) On January 18, 2006, Raffaele assigned the mortgage to Investors Mortgage LC. (Id., Ex. C.) On May 1, 2010, Investors Mortgage LC assigned the mortgage to Investors Trust LC, the Defendant in this case. (Id., Ex. E.)

The mortgage agreement between Investors and 3039 B Street required 3039 B Street to maintain hazard insurance on the Property. (Id., Ex. B at ¶ 5.) Lexington issued the hazard insurance policy to 3039 B Street ("Policy One"). (Doc. No. 36, Ex. 1.) The Policy, No. 7478565, was effective from June 30, 2007 to June 30, 2008. (Doc. No. 36, Ex. 1, Policy No. 7478565 at 1.) Policy One contained a Mortgage Clause which provided that in the event of loss

or damage to the Property, Lexington would pay the insurance proceeds to the mortgagee, which in this case is Investors.  (Id. at 29.)

After the pipes burst in January 2008, 3039 B Street made a claim for payment (the "2008 Loss Claim") under Policy One.  Lexington issued two checks as payment for the 2008 Loss Claim.  The first check is dated July 3, 2009 and was made payable to: "3039 B Street Assoc. Investors Mortgage, LC" in the amount of $78,511.84.  (Doc. No. 7, Ex. F.)  The second check is dated July 30, 2010 and was made payable to: "3039 B Street Associates, Inc., Harry P. Begier, Jr.,[2] Investors Mortgage, LLC" in the amount of $62,111.16.[3]  (Id., Ex. G.)  The two checks totaled $140,632 and were sent to 3039 B Street.  According to Investors, 3039 B Street put the funds in its operating account and used the money for ordinary business expenses rather than repairs.  (Doc. No. 7 at ¶ 39.)  Moreover, 3039 B Street admits that the insurance proceeds for the 2008 Loss Claim were not paid to Investors to reduce the balance owed under the mortgage.  (Doc. No. 44-2 at ¶ 10.)

One of 3039 B Street's partners, Gianni Pignetti, endorsed both checks on behalf of 3039 B Street.  (Doc. No. 39, Ex. 7 at 35:7-14.)  He did not present either check to Investors for its endorsement (Id. at 35:15-18), and Investors never received any portion of the insurance proceeds from the 2008 Loss Claim.  Despite being listed as a payee on both checks, Investors did not learn about the flood damage or the 2008 Loss Claim until July 29, 2010.  (Doc. No. 39-14, at ¶ 14.)

---

[2] At the hearing on the three cross motions for summary judgment held on December 19, 2013, counsel for 3039 B Street explained that Mr. Begier previously represented 3039 B Street and may have negotiated the checks in connection with the 2008 loss.

[3] The second check was issued after the January 2010 vandalism and theft of the copper piping.

**B.  The 2010 Loss Claim**

On or about January 19, 2010, vandals entered the Property, dismantled the electrical system and removed copper wiring from the building.  (Doc. No. 44-2 at ¶¶ 17-18.)  A different insurance policy covered this loss, Policy No. 4271548 ("Policy Two").  (Doc. No. 36, Ex. 2.)  Lexington also issued this insurance policy to 3039 B Street, and it was effective from June 30, 2008 to June 30, 2011.  (Doc. No. 36, Ex. 2 at 1.)  Like Policy One, Policy Two contained a Mortgage Clause which provided that in the event of loss or damage to the Property, Lexington would pay the insurance proceeds to the mortgagee, which again in this case is Investors.  (Id. at 29.)  After the Property was vandalized in January 2010, 3039 B Street submitted a claim to Lexington for the loss it sustained (the "2010 Loss Claim").

Around the same time, as noted above, 3039 B Street entered into a contract with MJGA to adjust the claim.  (Doc. No. 43 at ¶ 19.)  MJGA is a public adjusting firm which was hired to advise and assist 3039 B Street on the 2010 Loss Claim.  (Id.)  The contract provided that MJGA was entitled to receive ten percent (10%) of any proceeds paid by Lexington to 3039 B Street in settlement of the 2010 Loss Claim.  (Doc. No. 43, Ex. A.)

After MJGA completed its work on the claim, Lexington agreed to pay $206,349.72 to cover the loss.  (Doc. No. 1 at ¶ 11.)  Thus far, Lexington has issued two checks as payment on the 2010 Loss Claim.  On March 17, 2011, Lexington issued a check in the amount of $56,876.37.  (Doc. No. 39-14 at ¶ 18.)  On August 3, 2011, Lexington issued a second check in the amount of $9,631.37.  (Id.)  Both checks were endorsed over to Investors and were applied to reduce the balance of the mortgage.  (Id.)

In March 2011, 3039 B Street defaulted on the mortgage.  (Id. at ¶ 20.)  On May 16, 2011, Investors initiated foreclosure proceedings.  (Id. at ¶ 21.)  Almost a year later, Investors

obtained summary judgment in the foreclosure action against 3039 B Street in the amount of

$173,415.33.  (Id. at ¶ 22.)  A sheriff's sale of the Property took place on August 7, 2012.  (Id. at

¶ 23.)  Investors purchased the Property at the sheriff's sale and is now the record owner.  (Id.)

On May 15, 2013, the state court in the foreclosure action fixed the fair market value of the

Property at $250,000.  (Doc. No. 39-1 at 7.)  The court also found that Investors incurred

damages of $287,410.57[4] as a result of 3039 B Street's default.  (Id.)  The court therefore entered

a deficiency judgment in the amount of $37,410.57[5] in favor of Investors and against 3039 B

Street.  (Id. at 7-8.)

On December 5, 2012, Lexington filed the present interpleader action, naming only 3039

B Street and Investors as Defendants.  (Doc. No. 1.)  Lexington agrees it is obligated to pay

$130,041.98[6] under Policy Two, but filed the interpleader action because of a dispute between

3039 B Street and Investors over who is entitled to receive the proceeds.  In its Answer,

Investors brought a counterclaim against Lexington for breach of contract based on Lexington's

failure to pay Investors the insurance proceeds issued as a result of the 2008 Loss Claim.[7]  (Doc.

No. 7.)  In turn, Lexington filed a crossclaim against 3039 B Street for unjust enrichment for

---

[4] Investors' damages of $287,410.57 consist of the summary judgment award of $173,415.33, accrued interest on the judgment and other costs that Investors incurred as a result of 3039 B Street's default on the mortgage.  (Doc. No. 7 at ¶¶ 18-25.)

[5] The court arrived at this figure by subtracting the fair market value of the Property, $250,000, from the total amount of Investors' damages, $287,410.57.

[6] Lexington arrived at this figure by subtracting the $10,000 deductible under Policy Two plus the advance payments of $56,676.37 and $9,631.37 from the amount of $206,349.72 that it determined was the loss for the 2010 vandalism.

[7] In a related action, Investors has brought claims for conversion and fraud against 3039 B Street. Investors is attempting to recover the $140,632 of insurance proceeds that were distributed to 3039 B Street after Lexington processed the 2008 Loss Claim.  Investors Trust LC v. TD Bank, Nat'l Assoc. et al., No. 11-1551-JHS, Docket Entry 1.  This matter is currently in suspense.

retaining the insurance payment for the 2008 loss.  In the event that Lexington is liable to pay Investors for the insurance proceeds that were paid to 3039 B Street for the 2008 loss, Lexington is seeking, in the crossclaim, to recoup those funds.  (Doc. No. 15.)

Investors also filed a crossclaim against 3039 B Street for breach of contract based on 3039 B Street's default in paying the mortgage, arguing that Investors is entitled to the interpleaded funds which resulted from the 2010 Loss Claim.  (Doc. No. 7.)  Moreover, on July 18, 2013, adjuster MJGA moved to join in the interpleader action as an additional defendant. (Doc. No. 24.)  The Court granted the motion.  (Doc. No. 40.)  Thereafter, MJGA filed an Answer which contained crossclaims against both 3039 B Street and Investors.  (Doc. No. 43.)[8]

On September 19, 2013, Lexington filed a motion for summary judgment on all claims. (Doc. No. 35.)  Investors filed a cross-motion for summary judgment on its breach of contract claim against Lexington based on Lexington's alleged breach of the insurance policy by paying the $140,632 of insurance proceeds to 3039 B Street rather than Investors after the 2008 loss. (Doc. No. 39.)  Investors also filed a motion for summary judgment on its breach of contract claim against 3039 B Street for 3039 B Street's default of the Note and Mortgage.  (Id.) Investors seeks at least $37,410.57 of the interpleaded insurance proceeds from the 2010 Loss Claim which represents the deficiency judgment entered against 3039 B Street.

In turn, 3039 B Street filed a cross-motion for summary judgment against Investors which relates to the disbursement of the 2010 insurance proceeds that have been interpleaded with the Court.  (Doc. No. 44.)  3039 B Street argues that Investors is only entitled to $37,410.57

_____

[8] The claims of MJGA remain open in this case and are not covered by this Opinion.

of the proceeds, the amount of the deficiency judgment.  It contends that 3039 B Street should receive the remaining balance of $92,631.41.[9]

The three motions for summary judgment are before the Court for disposition.  For reasons that follow, Lexington's Motion for Summary Judgment (Doc. No. 35) will be denied as to Investors' counterclaim for breach of contract in connection with the 2008 loss.  The Motion will be denied on Lexington's crossclaim against 3039 B Street for unjust enrichment for the proceeds 3039 B Street received for the 2008 loss.  Investors' Motion for Summary Judgment (Doc. No. 39) will be granted as to its counterclaim against Lexington for Lexington's failure to pay Investors after the 2008 loss, and will be granted on its crossclaim against 3039 B Street for the full amount of the insurance proceeds that have been interpleaded with the Court as a result of the 2010 loss.  Finally, 3039 B Street's Motion for Summary Judgment (Doc. No. 44) will be denied in its entirety.[10]

## III.    STANDARD OF REVIEW

Summary judgment is an extraordinary remedy.  Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[9] MJGA did not file its own motion for summary judgment but opposes 3039 B Street's position that the remaining balance should go entirely to 3039 B Street.  (Doc. No. 51.)  In its limited opposition, MJGA contends that it is entitled to $16,835.44 of the remaining funds, pursuant to its contract with 3039 B Street.

[10] For purposes of this Opinion, the Court has considered Lexington's Complaint (Doc. No. 1), Investors' Answer with a counterclaim against Lexington and a crossclaim against 3039 B Street (Doc. No. 7), Lexington's Answer to Investor's counterclaim with a crossclaim against 3039 B Street (Doc. No. 15), 3039 B Street's Answer to Lexington's crossclaim (Doc. No. 22), 3039 B Street's Answer to Investors' crossclaim (Doc. No. 42), MJGA's Answer to Lexington's Complaint with crossclaims against 3039 B Street and Investors (Doc. No. 43), Lexington's Motion for Summary Judgment (Doc. No. 35), Investors' Motion for Summary Judgment (Doc. No. 39), 3039 B Street's Motion for Summary Judgment (Doc. No. 44), the parties' responses and replies (Doc. Nos. 45, 51-54, 60-61), all related exhibits and filings, and the arguments of counsel for the parties at a hearing on the Motions held on December 19, 2013.

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat. Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)).  A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 App'x at 158.  Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex rel. Chambers v. Sch. Dist. Of Philadelphia Bd. Of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–249.  Whenever a factual issue arises which cannot be resolved without a credibility determination, the Court must credit the non-moving party's evidence over the evidence presented by the moving party. Anderson, Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

9

In this case, the parties filed cross-motions for summary judgment. "The same standards and burdens apply on cross-motions for summary judgment." Allah v. Ricci, 12-4095, 2013 WL 3816043 (3d Cir. July 24, 2013) (citing Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir.1987)). When the Court is confronted with cross-motions for summary judgment,

> [T]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the summary judgment standard. If review of [the] cross-motions reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.

Hussein v. UPMC Mercy Hosp., No. 09-00547, 2011 WL 13751, *2 (W.D. Pa. Jan. 4, 2011) aff'd, 466 F. App'x 108 (3d Cir. 2012) (internal quotations omitted).

## IV.  ANALYSIS

### A.  Cross-Motions for Summary Judgment of Lexington Insurance Company and Investors Trust LC On the 2008 Loss

On September 19, 2013, Lexington moved for summary judgment on Investors' counterclaim for breach of contract based on the handling of the 2008 Loss Claim. (Doc. No. 35.) On October 3, 2013, Investors filed a cross-motion for summary judgment seeking to be paid the $140,632 of insurance proceeds that were paid to 3039 B Street for the 2008 loss. (Doc. No. 39.) On December 19, 2013, a hearing was held on the motions. At the hearing, the Court granted the parties leave to file supplemental briefs.[11]  The parties have done so, and the matter is ripe for disposition.

---

[11] In its supplemental brief, Lexington suggested in a footnote that New York law, rather than Pennsylvania law, should govern the interpretation of the Mortgage Clause. (Doc. No. 61 at n.1.) Because Lexington did not brief the issue at all and acknowledges that Pennsylvania and New York law are essentially in line with one another, the Court will not engage in a choice of law analysis. Instead, the Court will apply the substantive law of the forum state, Pennsylvania.

**1.  Investors' Breach of Contract Claim Against Lexington Regarding Payment for the 2008 Loss is Not Time Barred**

In its Motion for Summary Judgment, Lexington argues that Investors' counterclaim for breach of contract for failing to pay the proceeds from the 2008 loss to Investors is time barred by the one-year suit limitation provision in Policy One.  (Doc. No. 35 at 4-5.)  Investors contends that this limitation provision only applies to bar actions under an insurance policy that seek indemnification for a loss and does not apply to a breach of contract action.  (Doc. No. 53-2 at 8.)  Investors argues that its counterclaim is a breach of contract action which is based on Lexington's failure to make payment to Investors after the 2008 Loss Claim.  (Id.)

The material facts pertinent to Investors' counterclaim are not in dispute.  Investors is listed as a mortgagee in Policy One which was issued to 3039 B Street.  (Doc. No. 1 at ¶ 8.)  The policy contains a Mortgage Clause which provides in part:

> It is hereby agreed that in the event of loss or damage the Insurers will pay the said Mortgagees or Assignees to the extent of their interest in order of precedence of said mortgages, and this insurance, as to the interest of the Mortgagees or Assignees only therein, shall not be invalidated by any act or neglect of the Mortgagor or Owner of the property involved, nor by any foreclosure or other proceeding or notice of sale relating to the property, nor by any changes in the title or ownership of the property . . . .

(Doc. No. 36, Ex. 1, Policy No. 7478565 at 29.)  This Mortgage Clause in Policy One created a separate and distinct contract in favor of Investors as mortgagee.  See Guarantee Trust, 117 A.2d at 825 ("It has long been well settled that a standard mortgage[] clause in a fire insurance policy[12] creates a separate, distinct and independent contract of insurance in favor of mortgagee.") (citing Willits v. Camden Fire Ins. Ass'n, 189 A. 559, 560 (Pa. Super. 1937); Overholt v. Reliance Ins. Co. of Philadelphia, 179 A. 554, 556 (Pa. 1935)).  See also World of

---

[12] Pennsylvania law applicable to fire insurance policies applies equally to the hazard insurance policies that are integral to this case.

Tires, Inc. v. Am. Ins. Co., 520 A.2d 1388, 1390 (Pa. Super. 1987) (citations omitted).  A

mortgage clause gives the mortgagee a "superior right to the policy proceeds."  Guarantee Trust,

117 A.2d at 827 (quotation omitted).

　　　　In addition to the Mortgage Clause, Policy One also contains a suit limitation provision.

In relevant part, the policy states:

> Suit.  No suit or action on this policy for the recovery of any claim shall be
> sustainable in any court of law or equity unless all the requirements of this policy
> shall have been complied with, and unless commenced within twelve (12) months
> next after inception of the loss.

(Doc. No. 36, Ex. 1, Standard Fire Policy Provisions at p.4 of 4.)  Lexington argues that

Investors' counterclaim is time barred by this suit limitation provision because Investors filed its

counterclaim more than twelve months after the date of the loss when its cause of action arose.

(Doc. No. 35 at 4-5.)  Investors contends, on the other hand, that the suit limitation provision

does not bar its breach of contract claim because the twelve-month time limit only applies to

actions on the policy for recovery after a loss.  (Doc. No. 39-1 at 16.)  According to Investors, the

limitation provision only applies when the suit is based on a denial of or a failure to make an

insurance claim.  (Id.)

　　　　In this case, the insurance claim for the 2008 loss was filed and pursued by 3039 B Street,

which was paid under the policy.  Therefore, Investors has sued Lexington, contending only that

Lexington breached the Mortgage Clause by sending the insurance proceeds for the 2008 Loss

Claim to 3039 B Street rather than to Investors.  (Id.)  This cause of action is not based on a

claim seeking payment of insurance under the policy, but instead is based on a breach of a

contractual provision, the Mortgage Clause.  Thus, Investors argues that the policy's suit

limitation provision does not apply and therefore does not operate to bar its breach of contract

claim against Lexington.  (Id.)  Rather, Investors asserts that the Pennsylvania statute of

limitations for breach of contract should apply rather than the suit limitation provision found in the policy.  (Doc. No. 39-1 at 17.)  Under Pennsylvania law, the statute of limitations for breach of contract is four years.  42 Pa. Cons. Stat. Ann. § 5525.

In support of its position that the suit limitation provision does not operate to bar its counterclaim against Lexington, Investors relies primarily on Guarantee Trust, supra.  Guarantee Trust involved an action by a mortgagee of insured premises to recover for the insurer's alleged wrongful payment of proceeds to the mortgagors rather than the mortgagee.  In that case, Frank and Catherine Varano owned a residential dwelling that was secured by a $1,300 mortgage held by the estate of Samuel Fetterolf, the mortgagee.  117 A.2d at 825.  The Varanos obtained two fire insurance policies on the property from Home Mutual Fire Insurance Company ("Home Mutual") for a total of $2,900 in coverage.  Id.  Both policies contained a mortgage clause in favor of the mortgagee, the Fetterolf estate.  Id.  Each clause provided: "Loss or damage, if any, under this policy, shall be payable to Samuel Feterrolf Estate . . . as interest may appear."  Id. The two policies also contained suit limitation provisions which read: "No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the claimant shall show compliance with all the requirements of this policy, nor unless commenced within twelve (12) months next after the fire."  Id.

After a fire destroyed the property, the Varanos filed suit against the insurance company for the insurance proceeds within the prescribed time period and obtained a judgment in their favor.  Id.  They ultimately received a total of $2,107.50 for the fire loss.  Id.  Payment was made on March 31, 1949.  Id.  Despite the mortgage clause which required Home Mutual to pay the mortgagee for any loss, Home Mutual only paid the Varanos, and the mortgagee never received any portion of the payment.  Id.

On January 9, 1950, the mortgagee filed a complaint against Home Mutual, the insurer. Id.  The mortgagee alleged that in paying the proceeds of the fire loss to the Varanos, Home Mutual breached the policy's mortgage clause which required that payment be made to the mortgagee rather than the mortgagors.  Id.  In its breach of contract claim, the mortgagee did not attempt to recover proceeds for the fire loss under the insurance policies.  Brief for Appellant and Record at 33a, Guarantee Trust, 117 A.2d 824 (Pa. Super. 1955).  Instead, the mortgagee demanded that Home Mutual pay the amount remaining due under the mortgage—$1,213.50.  Id. In resolving this matter, the lower court considered the following question:

> Where the insured brings suit on fire insurance policies containing standard mortgage[] clauses within a period of twelve (12) months from the date of the fire as provided in the policies and it is judicially determined after the expiration of said limitation that there is a loss payable under the policies and the insurer pays the entire amount of said loss directly to the insured and not to the mortgagee named in the said mortgage[] clause, is the said mortgagee barred from maintaining suit against the insurer for the amount due on its mortgage which is less than the amount of the fire loss paid to the insured, for the reason that it did not institute its action within twelve (12) months of the occurrence of the fire?

Id. at 30a-31a (emphasis added).  The trial court determined that the mortgagee's failure to bring its own suit for proceeds under the policy should not prevent it from receiving that which it was entitled to under the mortgage clause—the extent of its interest in the property.  Id. at 34a. Because the mortgage clause required Home Mutual to pay proceeds to the mortgagee as its "interest may appear," the trial court entered judgment for the mortgagee in the remaining amount due under the mortgage—$1,213.50.  Id. at 35a.

Home Mutual appealed, and the Superior Court of Pennsylvania affirmed the lower court's ruling.  Guarantee Trust, 117 A.2d at 827.  In reaching this decision, the court explained that when Home Mutual paid the Varanos after judgment was entered in their favor, it breached the mortgage clause.  Id.  Under the mortgage clause, in the event of a loss, Home Mutual was

required to pay the mortgagee the extent of its interest in the property, or in other words, the amount remaining due under the mortgage.  On March 31, 1949, when Home Mutual issued insurance proceeds to the Varanos instead of paying the mortgagee the extent of its interest in the property, it gave rise to a cause of action for breach of contract.  Id. at 827.  In its breach of contract claim, the mortgagee sought to recover the extent of its interest in the property, the $1,213.50 which remained unpaid under the mortgage.

The court reasoned that the mortgagee's breach of contract claim should be controlled by the applicable statute of limitations rather than the insurance policy's suit limitation provision which governed actions on the policy to recover insurance proceeds.  In reaching this conclusion, the court explained that had the mortgagee sought recovery for the insurance proceeds under the policies, it would have been barred by the suit limitation provision because the suit had not been initiated within one year from the date of the loss as required.  Id.  However, rather than bring an action on the policy for insurance proceeds, the mortgagee was attempting to recover the unpaid amount remaining due on the mortgage under a breach of contract theory.  Id.  Because the mortgagee did not bring suit on the policy itself, the Superior Court agreed that the suit limitation provision did not apply.  Id.  Instead, the court viewed the action as a standard breach of contract claim that was governed by the then-applicable six-year statute of limitations.  Id.

According to the policy's mortgage clause, in the event of a loss, Home Mutual was required to pay the mortgagee as its interest appeared.  Home Mutual failed to do so.  The cause of action arose on March 31, 1949, when Home Mutual paid the Varanos instead of the mortgagee.  Id.  The mortgagee's breach of contract claim was initiated well within the applicable six year statutory period when it filed suit on January 9, 1950.  Id.  Judgment for the

15

mortgagee was affirmed, and Home Mutual was required to pay the mortgagee the extent of its interest in the property, the $1,213.50 remaining due under the mortgage.

Investors relies on Guarantee Trust for the proposition that "an action based upon an insurer's failure to fulfill its payment obligation under a mortgage[]/loss payable clause of an insurance policy is one of contract that . . . is subject to the statutory limitations period for a breach of contract claim" rather than the policy's suit limitation period.  (Doc. No. 391-1 at 15-16.)  Other courts have framed the issue similarly.  See Satchell v. Ins. Placement Facility of Pennsylvania, 361 A.2d 375, 380 (Pa. Super. 1976) ("If the insurance company pays damages to the insured in violation of a mortgagee clause . . . the twelve month limitations period is not applicable.").  This Court agrees.  Like the mortgagee in Guarantee Trust, Investors has not brought an action on the policy to recover an insurance claim.  Instead, Investors alleges that Lexington breached the Mortgage Clause when it paid 3039 B Street, rather than Investors, after the 2008 loss.  Therefore, this action is one of contract that is subject to the state's statutory limitation period rather than the policy's suit limitation provision which governs suits brought on the policy itself for the recovery of a claim.

Under the Pennsylvania statute of limitations for breach of contract claims, Investors had four years from the date of Lexington's breach to bring this suit.  As previously mentioned, Lexington's breach was sending payment to 3039 B Street rather than Investors, as required by Policy One's Mortgage Clause.  Lexington sent the first check in connection with the 2008 Loss Claim to 3039 B Street on July 3, 2009.  (Doc. No. 7, Ex. F.)  Therefore, under the Pennsylvania statute of limitations for breach of contract claims, Investors had until July 3, 2013 to file suit against Lexington.  Investors filed its counterclaim against Lexington on February 8, 2013.  Because it did so before July 3, 2013, Investors' counterclaim is timely.

16

## 2. Investors is Entitled to Judgment as a Matter of Law on its Breach of Contract Claim Against Lexington

Having determined that Investors' breach of contract claim against Lexington is not time barred, the Court will now consider whether Investors is entitled to judgment as a matter of law on its claim against Lexington. As noted above, "[i]t has long been well settled that a standard mortgage[] clause in a fire insurance policy creates a separate, distinct and independent contract of insurance in favor of mortgagee." Guarantee Trust, 117 A.2d at 825. Further, when an insurer fails to pay the mortgagee as required by the mortgage clause, the mortgagee may bring a breach of contract action against the insurer. See id. at 827. Here, the Mortgage Clause provides:

> It is hereby agreed that in the event of loss or damage the Insurers will pay the said Mortgagees or Assignees to the extent of their interest . . . .

(Doc. No. 36, Ex. 1, Policy No. 7478565 at 29 (emphasis added).) In addition, Policy One also contains a Lender's Loss Payable Clause which states:

> Loss or damage, if any, under this policy shall be paid to designated mortgagee … hereinafter referred to as the Lender, in whatever form or capacity its interest may appear and whether said interest be vested in said Lender . . .

(Id. at 30 (emphasis added).) These two provisions make it clear that in the event of a loss, payment should be made to Investors, as the designated mortgagee. However, when Lexington issued the two checks in connection with the 2008 loss, it did not send them to Investors as required. The first check, in the amount of $78,511.84, is dated July 3, 2009 and was made payable to:

> 3039 B Street Assoc.
> Investors Mortgage, LC

(Doc. No. 7, Ex. F.) The second check, in the amount of $62,111.16, is dated July 30, 2010 and was made payable to:

> 3039 B Street Associates Inc.

Harry P. Begier, Jr.
Investors Mortgage, LLC

(Id., Ex. G.)

While the Court recognizes that both checks listed Investors as a stacked payee, the

provisions of Policy One make clear that payment was to be made to Investors alone.

Furthermore, in Pennsylvania, "[i]f an instrument payable to two or more persons is ambiguous

as to whether it is payable to the persons alternatively, the instrument is payable to the persons

alternatively." 13 Pa. Cons. Stat. Ann. § 3110(d).  Without using the words "and" or "or" in

between the listed payees, Lexington created an ambiguity on the face of the two checks, and it

is unclear whether the instrument is payable to the payees jointly or alternatively.  Given this

ambiguity, the check was payable to the payees alternatively.  Id.  "If an instrument is payable to

two or more persons alternatively, it is payable to any of them and may be negotiated, discharged

or enforced by any or all of them in possession of the instrument."  Id.  This means that the

checks were payable to 3039 B Street or Investors, not both.  Id. at cmt. 4.  By failing to pay

Investors to the extent of its interest in the Property, Lexington breached the terms of the

insurance policy when it sent the payments to 3039 B Street rather than Investors as required.

Notwithstanding Lexington's payment to 3039 B Street, Investors is not entitled to be

paid for the 2008 loss beyond its remaining interest in the Property.  The Mortgage Clause

provides that "in the event of loss or damage the Insurers will pay the said Mortgagees or

Assignees to the extent of their interest . . . ."  (Doc. No. 36, Ex. 1, Policy No. 7478565 at 29

(emphasis added).)  The Mortgage Clause does not specify that the extent of the mortgagee's

interest is to be calculated as of the date of the loss.  Instead, the policy merely states that in the

event of a loss or damage, the mortgagee will be paid to the extent of its interest.  The extent of

Investors' interest in the Property has been determined in the state court mortgage foreclosure action.

In this case, the parties agree that Investors is still owed $37,410.57, the amount of the deficiency judgment, which is the extent of its interest. The plain language of the Mortgage Clause makes clear that Lexington is only required to pay Investors to the extent of this interest. As the mortgagee in Guarantee Trust was limited to recovering the unpaid amount due under the mortgage, so too is Investors limited to recovering the remaining amount owed, the $37,410.57 deficiency judgment.

In addition to the plain language of the Mortgage Clause which limits Investors' recovery to the extent of its interest, Pennsylvania law requires the same result. As the Superior Court of Pennsylvania has explained:

> In order to have an insurable interest in property, a person must derive pecuniary advantage from the continued existence of the property or suffer pecuniary loss from its destruction. The mortgagee's insurable interest is prima facie the value mortgaged, and extends only to the amount of the debt, not exceeding the value of the mortgaged property. Generally, the mortgagee's insurable interest is the amount of the mortgage debt since the debt represents its personal interest in the property. The mortgagee's insurable interest is initially presumed to be the value mortgaged, however, and a mortgagee's insurable interest cannot exceed the value of the property subject to the mortgage. Consequently, a mortgagee's ability to recover is limited to the extent of the debt secured by the property.

Sotelo v. Washington Mut. Ins. Co., 734 A.2d 421, 423 (Pa. Super. Ct. 1999) (internal quotations omitted). Under these general principles, a mortgagee generally may only recover the remaining amount of the debt due on the mortgage, which, under Pennsylvania law, is set by the amount of the deficiency judgment.

Investors contends, however, that it is entitled to the full $140,632 of insurance proceeds, rather than just its remaining interest in the amount of $37,410.57. Investors argues that its rights to the full amount of proceeds vested when Lexington issued the two checks in connection

with the 2008 Loss Claim, and those rights were not affected by the subsequent sheriff's sale. (Doc. No. 39-1 at 20-21.)  In support of this position, Investors relies on Option One Mortg. Corp. v. Fitzgerald, 687 F. Supp. 2d 520 (M.D. Pa. 2009) and Horbal v. Moxham Nat'l Bank, 697 A.2d 577 (Pa. 1997).  In Horbal, the Pennsylvania Supreme Court held that a Certificate of Deposit that the mortgagor assigned to the mortgagee bank as additional security for a loan could be liquidated and applied to the remaining debt on the mortgage after the mortgagee bank bought the property for a nominal sum at a sheriff's sale.  In Option One, a mortgagee brought suit against mortgagors and banks that honored an insurance check issued to the mortgagee and mortgagors listed as co-payees yet deposited without the mortgagee's knowledge.  The district court relied on Horbal in deciding that the mortgagee was entitled to recover the insurance proceeds that the mortgagors deposited without the mortgagee's required consent, despite having purchased the property at a sheriff's sale and the Wayne County Court of Common Pleas subsequently entering an order that the debt was fully satisfied.  Option One, 687 F. Supp. 2d at 525-26.  The Court reasoned that the insurance proceeds rightfully belonged to the mortgagee when they were issued, so the mortgagee was able to seek those funds from the mortgagors, despite the sheriff's sale.

Both Horbal and Option One are distinguishable from the case at hand.  Unlike this case, neither of those cases involved a mortgagee attempting to recover proceeds from an insurance company.  In fact, Horbal did not involve insurance proceeds at all.  While Option One did deal with the recovery of insurance proceeds, that case involved a mortgagee filing suit against a mortgagor who misappropriated the funds without the mortgagee's knowledge.  Here, rather than seeking to recover the insurance proceeds from 3039 B Street, Investors is attempting to collect it from Lexington.  More importantly, because neither of those cases involved a suit between a

mortgagee and an insurer, neither case analyzed the general principles of a mortgagee's insurable interest, and neither case involved a specific policy provision that limited the mortgagee's recovery to its interest in the property.  Here, the Mortgage Clause specifically limits Investors' recovery "to the extent of their interest."  (Doc. No. 36, Ex. 1, Policy No. 7478565 at 29.) Moreover, as noted, this provision does not specify that Lexington must pay the extent of Investors' interest as of the date of the loss.  The state court has determined that Investors is still owed $37,410.57.  Investors is entitled to recover this deficiency judgment amount, which represents its interest in the Property, but it may not recover the full $140,632 of insurance proceeds that Lexington already issued to 3039 B Street.

Lexington breached the contractual provisions of Policy One by failing to pay Investors after the 2008 loss.  Thus, Investors is entitled to summary judgment on its counterclaim against Lexington for breach of contract.  However, because the Court is awarding $37,410.57 to Investors in connection with the 2010 Loss Claim in the following section of this Opinion, Investors will be paid to the extent of its interest and therefore is not entitled to further recovery as result of Lexington's breach in regard to the 2008 loss.  Furthermore, because Lexington's crossclaim against 3039 B Street was contingent upon Lexington being held liable for damages in addition to the money it has interpleaded in this case, (Doc. No. 15 at ¶ 21), Lexington's Motion for Summary Judgment as to its crossclaim against 3039 B Street will be denied as moot.

**B.  Cross-Motions for Summary Judgment of Investors Trust LC and 3039 B Street Associates, Inc. On the 2010 Loss**

On October 3, 2013, Investors moved for summary judgment on its crossclaim against 3039 B Street for breach of contract based on 3039 B Street's default on the Note and Mortgage. As damages, it seeks to obtain the proceeds from the 2010 Loss Claim which have been

interpleaded with the Court and which Investors contends should be payable to it under the insurance policy.  (Doc. No. 39.)

3039 B Street filed a cross-motion for summary judgment on October 25, 2013.  (Doc. No. 44.)  On December 19, 2013, a hearing was also held on the motions.  As previously mentioned, Lexington filed this interpleader action on December 5, 2012 in order to determine the correct party to whom the $130,041.98 in insurance proceeds on the 2010 Loss Claim should be paid.  Both Investors and 3039 B Street agree that Investors is entitled to receive $37,410.57 from this amount, which is the deficiency judgment entered in favor of Investors.  (Doc. Nos. 39-1 at 23, 44 at 9-10.)  The question remains how the balance of the proceeds, or $92,631.41, should be distributed.  For reasons that follow, the Court will grant summary judgment in favor of Investors and award Investors the full amount of interpleaded funds.

### 1.  3039 B Street is Not Entitled to the Interpleaded Funds Because the Foreclosure Action Terminated its Interest in the Property

The material facts relevant to Investors and 3039 B Street's cross-motions for summary judgment are not in dispute.  In its Motion for Summary Judgment, Investors contends that 3039 B Street "has no basis upon which to claim any entitlement to the proceeds from the 2010 Loss Claim because, following foreclosure and the resulting Sheriff's Deed (transferring ownership of the Property) to Investors, 3039 B has no remaining insurable interest in the Property."  (Doc. No. 39-1 at 23.)  3039 B Street argues to the contrary that Investors cannot recover more than the deficiency judgment, and therefore 3039 B Street is entitled to the $92,631.41, which would be the remaining portion of the funds on deposit with the Court.  (Doc. No. 44.)

While the Pennsylvania Supreme Court has yet to determine the effect of foreclosure on a mortgagee's right to claim insurance proceeds, other courts have considered the issue.  A majority rule has arisen in favor of the mortgagee, which, as noted, in this case is Investors.  The

22

Superior Court of Pennsylvania adopted this majority rule in <u>Laurel Nat'l Bank v. Mut. Ben. Ins.</u> <u>Co.</u>, 444 A.2d 130, 134 (Pa. Super. 1982), stating, "under a policy containing a standard mortgage clause, the mortgagee's interest is protected as it may appear before or after foreclosure or other methods of change of ownership or title for the insurance follows the property." <u>Id.</u> There is an exception to this general rule, however.  "[I]f the mortgage indebtedness is fully satisfied after loss by foreclosure or other means, the mortgagee may not recover any proceeds under the insurance policy."  <u>Id.</u>  <u>See also</u> <u>Harleysville Ins. Co. v. Lacontora, et al.</u>, 34 Phila. Co. Rptr. 257, 264 (Pa. Com. Pl. June 19, 1997) ("If the mortgage indebtedness is fully satisfied by foreclosure initiated after loss, the insurance company has no further obligation to the mortgagee.") (citing <u>Nationwide Mut. Fire Ins. Co. v. Wilborn</u>, 279 So. 2d 460, 462, 464 (Ala. 1973).

  Here, the parties agree that the mortgage indebtedness was not fully satisfied by foreclosure.  In fact, Investors is still owed $37,410.57.  Because foreclosure did not fully satisfy the mortgage debt, Investors may recover these proceeds under the policy.  This outcome is consistent with the majority rule and its exception, adopted in <u>Laurel</u>.  Furthermore, while it is true that "the mortgagee is usually insured only to the extent of the mortgage debt since the amount of the debt represents its personal interest in the property[,]" the <u>Laurel</u> case also made clear that a mortgagor's rights are extinguished by foreclosure, including its rights to any insurance proceeds.  <u>Laurel</u>, 444 A.2d at 131, 133 (citing <u>Malvaney v. Yager</u>, 54 P.2d 135, 139 (Mont. 1936) ("Foreclosure is the process of cutting off all rights of the mortgagor . . . .")).  <u>See</u> <u>also</u> <u>Naffah v. City Deposit Bank</u>, 23 A.2d 340, 342 (Pa. 1941) (explaining that after foreclosure, the mortgagor no longer had an interest in the premises); <u>In re White's Estate</u>, 185 A. 589, 591 (Pa. 1936) (explaining that all of mortgagor's rights in the property were lost after the sheriff's

23

sale).  While a mortgagee is <u>usually</u> only insured to the extent of the mortgage debt, which is $37,410.57 here, it is also the case that a "mortgagor's rights to any insurance proceeds [are] cut off by foreclosure . . . ."  <u>Laurel</u>, 444 A.2d at 133.

With respect to the balance of $92,631.41, Lexington agrees that this money is owed in connection with the 2010 Loss Claim and has interpleaded these funds to be distributed between Investors and 3039 B Street.  Investors foreclosed on the mortgage and became the record owner of the Property as the winning bidder at a sheriff's sale.  3039 B Street no longer has any interest in the Property, and its right to insurance proceeds was extinguished upon foreclosure.  As noted above, a mortgage clause gives the mortgagee a "superior right to the policy proceeds." <u>Guarantee Trust</u>, 117 A.2d at 827 (quotation omitted).  Furthermore, 3039 B Street has set forth no legal authority in support of its position that it is entitled to the remainder of the proceeds, and awarding this money to 3039 B Street would defeat the purpose behind hazard insurance. Because 3039 B Street no longer owns the Property, it is highly unlikely that it would use the remainder of the proceeds to repair or restore the Property to its pre-vandalized condition.  As the Property's owner, Investors is in a position at its option to use the insurance proceeds for the purposes for which they are meant—to repair and restore the damaged Property.  For these reasons, Investors is entitled to summary judgment and will receive the full amount of interpleaded funds.

## V.   CONCLUSION

For the aforementioned reasons, Lexington's Motion for Summary Judgment (Doc. No. 35) will be denied on Investors' counterclaim and on its crossclaim against 3039 B Street. Investors' Motion for Summary Judgment (Doc. No. 39) will be granted on its counterclaim

against Lexington and granted on its crossclaim against 3039 B Street.  Finally, 3039 B Street's

Motion for Summary Judgment (Doc. No. 44) will be denied in its entirety.[13]

---

[13] While these rulings dispose of most of the claims in this case, as noted previously, Defendant Marc J. Grossman Associates' crossclaim against 3039 B Street and Investors remains.  (Doc. No. 43.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LEXINGTON INSURANCE COMPANY,

                Plaintiff,

v.

3039 B STREET ASSOCIATES, INC., et al.,

                Defendants.

CIVIL ACTION
NO. 12-6810

## ORDER

**AND NOW**, this 6th day of March 2014, upon consideration of the Complaint of

Lexington Insurance Company ("Lexington") (Doc. No. 1), the Answer of Investors Trust LC

("Investors") with a counterclaim against Lexington and a crossclaim against 3039 B Street

Associates, Inc. ("3039 B Street") (Doc. No. 7), Lexington's Answer to Investor's counterclaim

with a crossclaim against 3039 B Street (Doc. No. 15), 3039 B Street's Answer to Lexington's

crossclaim (Doc. No. 22), 3039 B Street's Answer to Investors' crossclaim (Doc. No. 42), the

Answer of Marc J. Grossman Associates ("MJGA") to Lexington's Complaint with crossclaims

against 3039 B Street and Investors (Doc. No. 43), Lexington's Motion for Summary Judgment

(Doc. No. 35), Investors' Motion for Summary Judgment (Doc. No. 39), 3039 B Street's Motion

for Summary Judgment (Doc. No. 44), the parties' responses and replies (Doc. Nos. 45, 51-54,

60-61), all related exhibits and filings, the arguments of counsel for the parties at a hearing on the

Motions held on December 19, 2013, and in accordance with the Opinion of the Court issued this

day, it is **ORDERED** as follows:

    1.      The Motion for Summary Judgment of Lexington Insurance Company (Doc.

            No. 35) on Investors Trust LC's counterclaim is **DENIED**.

1

2.      The Motion for Summary Judgment of Lexington Insurance Company (Doc.

No. 35) on its crossclaim against 3039 B Street Associates, Inc. is **DENIED**.

3.      The Motion for Summary Judgment of Investors Trust LC (Doc. No. 39) on its

counterclaim against Lexington Insurance Company is **GRANTED**.

4.      The Motion for Summary Judgment of Investors Trust LC (Doc. No. 39) on its

crossclaim against 3039 B Street Associates, Inc. is **GRANTED**.

5.      The Motion for Summary Judgment of 3039 B Street Associates, Inc. (Doc. No.

44) on Investors Trust LC's crossclaim is **DENIED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.